******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

D'AURIA, J., concurring. I agree with the majority's opinion in full. I write separately only to highlight certain concerns I have that might arise on remand if the plaintiffs, the Kent Literary Club of Wesleyan University at Middletown (Kent), the Gamma Phi Chapter of Delta Kappa Epsilon at Wesleyan (DKE) and Jordan Jancze, succeed on their claims under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and once again seek equitable relief.

The plaintiffs brought this action alleging promissory estoppel, negligent misrepresentation, tortious interference with business expectancies, and violations of CUTPA. Their prayer for relief sought compensatory damages, punitive damages, attorney's fees and costs, and specific performance. As to the CUTPA claims, the plaintiffs alleged that the named defendant, Wesleyan University (Wesleyan), engaged in trade or commerce in two ways. First, they claim that, "by virtue of its advertising of, and its offering for rent or lease, various properties to students as residential housing, which it markets as an integral part of their educational experience," Wesleyan engaged in trade or commerce. In this paradigm, the student plaintiff, Jancze (this is not a class action), is a consumer of residential housing, and Kent is Wesleyan's "competitor." The plaintiffs also claim that Wesleyan used DKE and promised housing there to students (including athletes) as a way of enticing them to choose to attend Wesleyan but always intended to pull the rug out from under them by denying students DKE housing and requiring students to "reside in more expensive housing" offered by Wesleyan.

Prior to trial, Wesleyan and the other defendants, Wesleyan's president, Michael S. Roth, and its vice president for student affairs, Michael J. Whaley, moved to strike both of the plaintiffs' CUTPA claims and their prayer for relief for specific performance. As to the CUTPA claims, the defendants argued that the plaintiffs failed to allege sufficient facts to establish that the alleged misrepresentations violated CUTPA because the plaintiffs did not allege that the defendants made the misrepresentations with the intent to deceive. The trial court agreed with the defendants and struck the CUTPA claims. The plaintiffs repleaded the CUTPA claims to correct this defect and to include the intent element. The defendants did not file any subsequent motion to strike the repleaded CUTPA claims.

As to the prayer for relief, the defendants argued that none of the alleged causes of action permitted the court to order specific performance requiring Wesleyan to include the DKE House as an option in its offering of program housing. The trial court, however, agreed with

the plaintiffs that their claims for *promissory estoppel* supported a prayer for relief of specific performance. Specifically, despite a lack of any controlling case law from this court or the Appellate Court on the issue, the trial court explained that, under breach of contract principles, the plaintiffs may be entitled to specific performance if monetary damages proved inadequate or impracticable, and that this principle applies equally to claims of promissory estoppel.

Following a trial, the jury returned a verdict in favor of the plaintiffs on all counts and awarded Kent $386,000 in damages. In addition, the trial court, acting under CUTPA, awarded the plaintiffs $398,129 in attorney's fees and $13,234.44 in costs. The plaintiffs then filed a motion in the trial court seeking equitable relief in the form of specific performance solely on the basis of their claim of promissory estoppel. Specifically, they sought an award requiring Wesleyan to include the DKE House as a program housing option and allowing DKE brothers full access to reside and to engage in social activities at the house "as they had prior to [Wesleyan's] 'coeducation' policy . . . ." In neither their prayer for relief nor in their motion for an award of specific performance did the plaintiffs request injunctive relief under CUTPA. The trial court determined that this failure by the plaintiffs did not prevent it from awarding injunctive relief under both CUTPA and the promissory estoppel claims, as the defendants were aware from the beginning of the case that the plaintiffs were seeking specific performance and alleging CUTPA violations.

The trial court issued a mandatory injunction, requiring, among other things, that Wesleyan enter into a new contract with Kent and DKE, resume housing Wesleyan students in the DKE House, and give DKE three years in which to coeducate.[1] The trial court determined that injunctive relief was necessary for the plaintiffs to obtain the full measure of justice under both their CUTPA claims and their promissory estoppel claims because, among other things, DKE and Kent had participated in Wesleyan's program housing system for many years, other residential Greek organizations had been given three years in which to implement a viable coeducational scheme, and Wesleyan had committed to providing DKE the same opportunity as those other organizations to adapt to the new policy. The court also alluded to the fact that the jury had found that Wesleyan acted arbitrarily, capriciously, or in bad faith. Yet, the trial court declined to award punitive damages, which, under CUTPA, are for the court to award in its discretion. See General Statutes § 42-110g (a) ("[t]he court may, *in its discretion*, award punitive damages" (emphasis added)).

This court's ultimate conclusion in the present case that a new trial is warranted on all claims, including CUTPA, means it is entirely possible that the question

of a mandatory injunction might not reoccur on remand. The parties might litigate the case very differently on remand, or it is possible the plaintiffs will not prevail on their CUTPA counts, obviating the need for the trial court or an appellate court to consider such an injunction. Because I consider central to this appeal the scope of the injunction that the trial court entered after trial, I believe it warrants comment in this unique case, lest the trial court on remand construe our not reaching the question of its propriety as suggesting tacit approval.

I find the injunction that the trial court entered problematic for multiple reasons. First, as the trial court noted, neither this court nor the Appellate Court ever has determined whether the remedy of specific performance is available in a promissory estoppel case in which there are no allegations of an underlying contract. I do not address this issue, however, because, even if specific performance is a permissible remedy under promissory estoppel, the injunction at issue went well beyond ordering specific performance. Specific performance "requires precise fulfillment of a legal or contractual obligation . . . ." Black's Law Dictionary (11th Ed. 2019) p. 1686 (specific performance is "[t]he rendering, as nearly as practicable, of a promised performance through a judgment or decree; specif[ically], a court-ordered remedy that requires precise fulfillment of a legal or contractual obligation when monetary damages are inappropriate or inadequate"). Here, the trial court did not merely order Wesleyan to fulfill the precise terms of the alleged promises but went beyond those terms and ordered it to enter into a three year contractual relationship with DKE. For this reason, I do not believe the scope of the injunction was proper under the promissory estoppel claim. My view is bolstered by the plaintiffs' counsel's concession at oral argument before this court that the better argument for the source of authority for the injunction, if there is one, is under CUTPA, not promissory estoppel.

My remaining concerns involve the issuance of the injunction under CUTPA. Initially, I note that I am not convinced that the plaintiffs' request for specific performance under the promissory estoppel claims placed the defendants on notice that the plaintiffs were seeking an injunction under CUTPA. The purpose of specific performance differs greatly from the purpose of equitable relief under CUTPA—the former, as discussed previously, requires the parties to fulfill their promised obligations exactly as stated; the latter, as I will discuss in more detail, seeks to remedy the allegedly unfair or deceptive practice or method of competition.

But even if the defendants were on notice of the plaintiffs' request for equitable relief under CUTPA, and assuming that there is a cognizable CUTPA claim to begin with, I question the scope of the injunction in this case—specifically, whether the injunction actually

serves to eliminate or to compensate for the allegedly unfair or deceptive trade practices. Because the case is remanded for a new trial, I do not need to address in detail the propriety of the scope of the injunction at issue under CUTPA. Nonetheless, in the event that the plaintiffs succeed on their CUTPA claims, I wish to note my significant concerns over the scope of this injunction.

I recognize that CUTPA affords plaintiffs broad remedies beyond simple monetary damages, including attorney's fees, punitive damages, and injunctive and other equitable relief. See, e.g., *Marinos* v. *Poirot*, 308 Conn. 706, 712–13, 66 A.3d 860 (2013). Further, this court has yet to clarify to what extent the general rules governing injunctions apply to injunctions issued under CUTPA, but I have no reason to believe that these general principles do not apply in this context, with one exception I will discuss. To be entitled to injunctive relief, "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . [I]n exercising its discretion, the court . . . may consider and balance the injury complained of with that which will result from interference by injunction." (Internal quotation marks omitted.) *Wallingford* v. *Werbiski*, 274 Conn. 483, 494, 877 A.2d 749 (2005). "[T]he relief granted must be compatible with the equities of the case." (Internal quotation marks omitted.) *Dukes* v. *Durante*, 192 Conn. 207, 225, 471 A.2d 1368 (1984). "[I]t may be inequitable to grant an injunction which would cause damage to the defendant greatly disproportionate to the injury of which the plaintiff complains [especially if] . . . the judgment went beyond the relief to which the plaintiff was entitled under the statutes." (Citations omitted.) *DeCecco* v. *Beach*, 174 Conn. 29, 35, 381 A.2d 543 (1977); see *Lydall, Inc.* v. *Ruschmeyer*, 282 Conn. 209, 240–41, 919 A.2d 421 (2007) (holding that injunction is overly broad under Connecticut Unfair Trade Secrets Act, General Statutes § 35-50 et seq., if it protects information that is not trade secret).

Unlike other statutes, the CUTPA statutes do not provide that "[i]n such actions the court shall follow the rules and principles governing the granting of injunctive relief." General Statutes § 35-34; cf. General Statutes § 42-110g (d). See generally R. Langer et al., 12 Connecticut Practice Series: Connecticut Unfair Trade Practices, Business Torts and Antitrust (2020–2021 Ed.) § 6.9. Moreover, this court specifically has explained that, to be entitled to injunctive relief under CUTPA, a plaintiff need not establish that no adequate alternative remedy exists and that the injury is irreparable. See *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 310 Conn. 797, 805 n.6, 82 A.3d 602 (2014). Like injunc-

tive relief in general, however, injunctive relief under CUTPA is entrusted to the trial court's discretion. See General Statutes § 42-110g (d) ("the court may, *in its discretion*, order, in addition to damages or in lieu of damages, injunctive or other equitable relief" (emphasis added)). "[D]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to [serve] and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 392, 3 A.3d 892 (2010). Thus, although the general requirements of irreparable harm and lack of an adequate remedy at law need not be satisfied to entitle a plaintiff to injunctive relief under CUTPA, I believe that the general rule that, in ordering injunctive relief, the trial court must consider and balance the equities of the case so that the injunction is not disproportionate to the injury at issue still applies. Even under CUTPA, the injunctive relief must be tailored to the alleged harm and not go beyond the relief to which the plaintiff is entitled under the statute.

Two trial level cases support my conclusion. In *Bristol Technology, Inc.* v. *Microsoft Corp.*, 114 F. Supp. 2d 59, 95–96 (D. Conn. 2000), vacated on other grounds, 250 F.3d 152 (2d Cir. 2001), the defendant challenged both the plaintiff's entitlement to injunctive relief under CUTPA, arguing that the plaintiff had failed to establish irreparable harm, as well as the scope of the injunction. Judge Janet C. Hall of the United States District Court for the District of Connecticut, applying state law, held that the plaintiff did not have to establish irreparable harm to be granted injunctive relief. Id. Nevertheless, the court noted that the scope of the injunctive relief had to be "no broader than necessary to cure the effects of the harm caused by the violation . . . . Injunctive relief should be narrowly tailored to address specific harms and not impose unnecessary burdens on lawful activity. . . . [The] court must exercise its discretion in framing an injunction that is reasonably designed to prevent wrongful conduct. . . . The court should grant injunctive relief only in conformity with the spirit of the law, and in a manner to [serve] and not to impede or defeat the ends of substantial justice." (Citations omitted; internal quotation marks omitted.) Id., 97. Because the plaintiff was seeking injunctive relief under CUTPA for allegedly deceptive trade practices, the court concluded that "[t]he injunctive relief in this case should be designed to eliminate [that] deception." Id., 98.

More recently, then Judge Bright similarly explained that, even if a plaintiff is entitled to injunctive relief under CUTPA, "the injunction must be narrowly tailored to address only the conduct that violates the statute." *State* v. *Tracey's Smoke Shop & Tobacco, LLC*, Superior Court, judicial district of Hartford, Docket Nos. CV-11-6024334S and CV-11-6024337S (February 24,

2012) (*Bright, J.*) (53 Conn. L. Rptr. 594, 601). According to Judge Bright, although the trial court has discretion to determine the scope of the injunction, "[s]uch relief should be narrowly drawn to the circumstances of the case." Id., 600. Judge Bright applied these principles in a sovereign enforcement action in which the state alleged that the defendant, a tobacco shop, became a cigarette manufacturer when its employees assisted customers in the operation of the filling stations that allowed customers to roll their own cigarettes, thus violating General Statutes § 4-28m (b) (2), which constituted a CUTPA violation under § 4-28m (d). Id., 599–600. Judge Bright disagreed with the state that the plaintiff should be enjoined from using the filling stations under any and all circumstances; rather, Judge Bright ruled that, under CUTPA, the state was entitled to a more narrow injunction enjoining the plaintiff from conduct only to the extent that it was acting as a tobacco product manufacturer. Id., 600.

I agree with the admonitions of the courts in both *Bristol Technology, Inc.*, and *Tracey's Smoke Shop & Tobacco, LLC*, that an injunction issued under CUTPA must be properly tailored to vindicate the alleged CUTPA violation. In the present case, on remand, to the extent that the plaintiffs establish their CUTPA claims, the trial court, in exercising its discretion to grant injunctive relief under CUTPA, must consider and balance the equities of the case so that the injunction (1) is not disproportionate to the injury at issue, and (2) does not go beyond the relief to which the plaintiffs are entitled under CUTPA. In considering these factors, I emphasize that the purpose of CUTPA as a whole "is aimed at eliminating or discouraging unfair methods of competition and unfair or deceptive acts or practices." (Internal quotation marks omitted.) *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 616–17, 440 A.2d 810 (1981). This does not give the trial court carte blanche to fashion any injunctive relief it might wish to fashion, even on the basis of a jury finding of arbitrary, capricious, or bad faith conduct. Although such conduct might justify punitive damages, which are available under CUTPA but which the trial court chose to deny in the present case, it does not allow the trial court to craft equitable relief that exceeds the scope of the alleged CUTPA violation.

I have difficultly seeing how the injunction the trial court entered after trial vindicates the alleged CUTPA violations. For example, in counts one and two of the operative complaint, the plaintiffs alleged that the defendants violated CUTPA as to DKE members and the individually named student plaintiff, Jancze, on the ground that Wesleyan marketed its residential housing by emphasizing its " 'diversity of housing options,' " including the opportunity for upperclassmen to select the DKE House, and used this marketing to recruit athletes but intentionally failed to disclose that Wes-

leyan had the unilateral ability to eliminate the DKE House as a housing option, and, intending not to deliver on those representations, thereby deceived consumers—the prospective students. The deceptive practice at issue is that of deceiving prospective students about the possibility of the DKE House being available as a housing option. The injunction does not address this allegedly deceptive practice. It does not require the defendants to disclose Wesleyan's unilateral ability to control its residential housing options. Rather, it *requires* that the DKE House be a housing option. Not only does this not eliminate the deceptive practice, but it does not remedy the alleged injustice. Because Jancze likely is no longer a Wesleyan student, given the time that has passed since trial, the injunction mandating that Wesleyan and Kent enter into a three year contract does not provide him any remedy. The same goes for other DKE members who might claim to have been deceived by the defendants, as the DKE House has not been an option since the 2015–16 academic year.

Additionally, in counts seven through nine, the plaintiffs alleged that the defendants violated CUTPA as to Kent on the ground that Wesleyan engaged in trade or commerce by advertising and leasing residential housing to students; that Wesleyan was a competitor of Kent in the market for student housing; and that the defendants engaged in unfair methods of competition by intentionally misrepresenting the criteria that Kent would have to satisfy for the DKE House to remain a housing option. Similarly, in counts ten and eleven, the plaintiffs alleged that the defendants violated CUTPA as to DKE on the ground that Wesleyan engaged in trade or commerce by advertising and leasing residential housing to students, including members of DKE, and that the defendants engaged in unfair or deceptive practices by intentionally misrepresenting the criteria that the members of DKE would have to satisfy for the DKE House to remain a housing option.

The injunction the court entered, however, does not actually seek to police the student housing market or to promote competition in that market. It does not seek to eliminate the allegedly unfair practices and methods of competition—i.e., the alleged marketing misrepresentation. Rather, it forces the parties into a continued contractual relationship. Although this may seem at first glance to be an equitable remedy, attempting to put the plaintiffs in the position they would have been in but for the misrepresentations, in my view, it is a disproportionate remedy. Prior to the injunction, Wesleyan was not required to permit students to live off campus and, under the Greek Organization Standards Agreement, could terminate the agreement for any reason. But the injunction forces Wesleyan not only to allow off-campus housing but to enter into a contract with Kent and DKE requiring the DKE House to be a housing option.[2]

As the court is remanding this case for a new trial regardless of the propriety of the scope of the injunction, I recognize that we need not decide whether the injunction was properly tailored to vindicate the alleged CUTPA violations. Rather, I merely raise this issue in this unique trade practices action to emphasize that, in the event that the plaintiffs succeed on their CUTPA claims and request equitable relief, the trial court should look closely at the remedies afforded by the legislature under CUTPA and choose those that vindicate that act and not some other causes of action. I respectfully concur.

[1] With respect to the injunction, the court issued the following order: "Kent . . . and DKE are ordered to submit and reaffirm in current form the plan for coeducation of 276 High Street [the location of the DKE House] on or before January 15, 2018. . . . Wesleyan . . . is ordered to include the DKE House . . . as an option in its offering of program housing for the . . . 2018 [fall] semester. Kent . . . and DKE, as organizations, and [Wesleyan], are ordered to enter into a Greek [Organization] Standards Agreement, which agreement is necessary to allow Kent . . . and DKE to house Wesleyan students for the 2018 fall semester. Under this order, DKE is not authorized to occupy or utilize the premises at 276 High Street until the start of the 2018 fall semester. Except as provided herein, the agreement is to be the same Greek [Organization] Standards Agreement that Wesleyan enters into with other residential Greek organizations. The Greek [Organization] Standards Agreement to be executed by the parties should contain the same nondiscrimination clause that was previously agreed to by the parties. . . . The court retains jurisdiction to ensure compliance with this order. This order is without prejudice to Wesleyan . . . to enforce its rights under the agreement, subject to its obligations under the agreement." (Citation omitted.)

The trial court provided the following additional "guidance" in the event that further proceedings might become necessary to enforce the order: "The purpose of this order is to place the plaintiffs and [Wesleyan] in the same position they would have been in had Wesleyan accepted the plaintiffs' plan for coeducation . . . when it was submitted to [Wesleyan] in 2015. The three year period for full coeducation of [the] DKE House should begin with the . . . 2018 [fall] semester. It is expected that the plaintiffs will diligently fulfill the obligations they have committed to under their coeducation plan. It is also expected that, as to the plaintiffs, Wesleyan will apply the same standards for compliance with the plan of coeducation of residential Greek organizations that it has applied to other similar organizations.

* * *

"The order issued herein is not intended to overturn, modify, or thwart Wesleyan's plan of coeducation of residential Greek organizations. To the contrary, in fashioning this relief, the court has sought to provide an instrumentality to bring about compliance with the coeducation plan by all parties."

[2] I note that there is at least some ambiguity in the trial court's posttrial injunction and guidance regarding the required duration of the imposed contractual relationship. Although the trial court's posttrial injunction states that the parties are to enter into "the same Greek [Organization] Standards Agreement that Wesleyan enters into with other residential Greek organizations," implying that the thirty day termination provision still applies, the trial court did not clarify how this provision would interact with its order that the DKE House has three years to coeducate. If the DKE House has three years to coeducate, it is unclear whether Wesleyan could terminate their court-mandated contractual relationship before the end of three years for bad faith conduct during the coeducation process, for conduct unrelated to the coeducation process, or for any reason at all, as it could under the previous consensual contract.